Green, J.
delivered the opinion of the court.
Jacob was the property of Abraham Vernon, who in 1S25 made his last will and testament, and shortly afterwards died. After devising some pecuniary legacies, the will proceeds, “and the residue to be at the disposal of my wife, as she wishes; and my negroes, named Jacob, Jinne and her two children, Jack and Malinda, I wish her to keep them if they are obedient to her, and at my wife’s death, I wish them to be set free, and if they should be disobedient to my wife, she may dispose of them as she pleases.” After the death of Vernon, his widow married the defendant, — since which time she has died. The defendant being about to take Jacob to the South, and sell him as a slave, this bill is filed by Jacob, to restrain defendant, and to obtain his freedom.
1. The first question is upon the construction of the will/ It is earnestly contended by the counsel for the defendant, that the right of disposition conferred upon Mrs. Vernon, by the will vested in her the absolute title to the slaves, and is wholly'inconsistent with their right to freedom after her death. On the other hand it is insisted by the counsel for Jacob, that the true meaning of the phrase in the will that “she may dispose of them as she pleases,” does not author^ *117 ize the exercise of an absolute right to them, dr impair theii title to liberty.
It is unnecessary to determine which side is right in the construction contended for, inasmuch as this court has deter» mined in the case of Latina vs. Duffield's Executors,* *118 that the principie contended for by the counsel of the defendant, doe's not apply to the case of a devise of freedom. The liberty which a testator intends to bestow, is of so high a value to the objects of his benevolence, — and must be supposed so to occupy his thoughts,- and so strongly to fix his purposes, that a devise of freedom is not to be defeated by any right of disposition (not exercised) which may be given to a devisee for life; — and if there be any doubt of the meaning of the will, the power of disposition, must be construed to be subordinate, to the higher, and more important right of freedom.
But in this will, no absolute power of disposition is given. The' testator says, “if they should be disobedient to my tvifej she may dispose of them as she pleases.” Here the right of disposition, depends upon a contingency which may never happed, and of course, she could acquire no absolute right to them, until they become disobedient, — and in the exercise of her power she should actually dispose of them. It will not do to say, they were disobedient, and therefore an absolute right to them vested in her. The will only confers the right to dispose of them, on the happening of the contingency mentioned. She is left free to determine what conduct on their part should constitute a “disobedience,’’.¡that would justify her in selling them. The testator did not contemplate that the slightest disobedience should constitute the tight of disposition, for he knew that perfect obedience, had never been attained by mortal man. And, therefore, proof of Jacob’s disobedience could have no effect on conferring on Mrs. Vernon an absolute title to him, unless she had acted üpon it, and executed the power conferred on her by the will, by actually disposing of him.
2. It is next contended that Mrs. Vernon did actually dispose of Jacob by her marriage with the defendant. It is true she conferred on the defendant, by that act, all the title to Jacob which she herself had — which was an estate for life. But it is not easy to comprhened, how Sharp, by the marriage, acquired a greater estate in Jacob, than his wife possessed before the marriage, — or how the marriage could enlarge Mrs. Vernon’s rights under the will.
*119 3. It is next insisted that Jacob’s right to freedom depended upon a condition precedent, — (his good behavior) with which condition he has not complied, and therefore the right does not exist. This position is taken, because of inattention to the terms of the will. It will be perceived upon inspection of the will, that the right to freedom is absolutely conferred, — but the power to defeat that right, is given Mrs. Vernon, on the happening of a contingency. The principle here insisted on, has no application to this case.
4. It is next insisted, that Jacob’s character is too bad to justify this court in consenting on the part of the State, that he should be free. We .do not think the proof is such as to .authorize us to say that Jacob is unfit for the freedom this will ¡confers .on him,; — more especially as he is to leave the State.
Affirm the decree.

Jobn Duffield, of Davidson county, made his last will and te&tameut, on the 6th of March, 1807, in which, after providing for the payment of his debts-, there was the following disposition relative to the residue-. “AH to belong and be at my loving wife, Elizabeth Duffield’s disposal and command, during her life time; and at her death, all the negroes of mine to be emancipated agreeable 'to the following directions, wbicii are, — all my male negro slaves are lo be free at 22 years of age, and the females at 19 years of age.” fío died in June, 181^', and his wife in 1832. The executors of his will neither qualified nor acted in the administration. Ou the 8ih of August, 1833, Davina, who was one of Duffield’s slaves at the date of the will aud at his death, filed her bill, hi which Jackson, her son joined, in the chancery court at Pulaski, against the surviving executors of her master’s will and John Goff, who held them in slavery, praying the court to decree them their freedom, and for general relief. Th£ bill was dismissed as to one of the persons sued as executor, by consent. The other answered and disclaimed, never having qualified or acted as executor. Goff answered, admitting that he had held the complainants as slaves for eight or nine years, “as he had a right to do*,” without stating the grourtds of said right, aud denying that Lavhia was one of the negroes owned by Duffield at thfe date of his will, and thence up t j his death, and that she was one who was intended by him to be emancipated. This denial Was made upon information which respondent believed to be tiue*, but he did not stale who gave him the information, or what facts it consisted of.
The proof Í3 that Lavina had been in Duffield’s possession before and at his death, at least; and according to the belief of the witness, had been born on hi& plantation, and positively that she was raised by him, but whether she was his property or his wife’s the witness could not declare.
At September term, 1837, Chancellor Williams dismissed the bill. The Complainants appealed; and ou the hearing, cn the 3rd of iMarclr, 1838, the court pronounced a decree establishing their freedom. After stating the material facts in the case, the opinion of the court, which was delivered by Judge Turley, proceeds:—
“It is admitted that the right of the Complainants to be emancipated depends fcpon the construction of the will of Duffield. The defendants insist, that an absolute title to the negroes was invested in Elizabeth Duffield by its provisions. But the court cannot give it such a construction. It is obvious that the intention of the testator was only to give a life estate to his widow; and the words used do not give it a greater. The devise is comprised in one sentence, viz:— Ho belong to, and be at my loving wife* Elizabeth Duffield’s disposal and command during her life time, and at her ’death} all the negroes of mine to be emancipated.’ Exposition cannot make this provision plainer. There is no pretence for saying that more than a life estate in the negroes was given to Elizabeth Duffield. This court is, therefore, of opinion, that the complainants are entitled to their freedom; and order that they be emancipated, upon their giving bond and security to indemnify the county of Davidson — the place John Duffield’s residence at the time of his death — according to the existirig laws ou the subject»”